IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| AIU INSURANCE COMPANY, *as subrogee of* GARTHLAND, LLC, <br><br>         *Plaintiff,* <br><br>v. <br><br> OMEGA FLEX, INC., <br><br>         *Defendant.* | CIVIL ACTION NO. 3:11-CV-00023 <br><br> **MEMORANDUM OPINION** <br><br> JUDGE NORMAN K. MOON |

  This matter, a tort case removed here from the Circuit Court of Albemarle County, is before the court upon consideration of Defendant's motion to dismiss, which has been fully briefed and heard. For the reasons stated herein, the motion will be granted, in part, and denied, in part.

### I. STANDARD OF REVIEW

  A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994) (citation omitted); Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 8. A court must take "the material allegations of the complaint" as admitted, and liberally construe the complaint in favor of a plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citation omitted). However, upon consideration of motions to dismiss for failure to state a claim upon which relief may be granted, I apply the pleading standard as refined by *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. \_\_\_, 129 S. Ct. 1937 (2009). Plaintiffs must allege facts that "state a claim to relief that is plausible on its face," *i.e.*, facts that "have nudged their claims across the

line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949.

## II. FACTUAL BACKGROUND

Plaintiff, AIU Insurance Company, is the subrogee of Garthland LLC,[1] a limited liability company owned and operated by Ms. Hunter Crosson. AIU insured Garthland's property at 1347 Garth Road in Charlottesville ("the property") for the policy period May 1, 2009, to May 1, 2010. Defendant, Omega Flex, Inc., is a Pennsylvania corporation engaged in the business of designing, manufacturing, and supplying a flexible corrugated stainless steel tubing, commonly known as "CSST," which Defendant has branded as "TracPipe," for use in various gas piping applications.

Garthland contracted with Alexander Nicholson, Inc. ("Nicholson"), for extensive renovations to a residence on the property at 1347 Garth Road. Nicholson was responsible for the hiring, coordination, and supervision of the subcontractors who worked on the residence, including contractors who installed the home's plumbing system and CSST, which was Omega Flex's TracPipe. The CSST was installed in the basement of the residence, in close proximity to duct work.

On June 3, 2009, lightning struck at or near the property, and the CSST was damaged by the strike. The CSST conducted the electricity produced by the lightning strike, and the electricity arced and created a hole in the CSST. Natural gas escaped from the CSST, ignited,

---

[1] The parties sometimes refer to "Garth Land."

and caused a fire, which resulted in sudden and significant damage to Garthland's and Ms. Crosson's real and personal property, incurring substantial incidental and consequential damages that were not caused by any acts or omissions on the part of AIU's subrogee. AIU paid $249,302.91 to its insured, pursuant to the policy, which subrogates to AIU Garthland's rights and claims against third parties.

### III. DISCUSSION

Count I of the complaint alleges that Omega Flex was negligent, and Count II alleges that Omega Flex breached its implied warranty of merchantability.[2] Defendant contends that the negligence count is barred under the common law's privity requirement and Virginia's economic loss rule, and that the breach of implied warranty claim is "similarly flawed in that: (a) the UCC does not apply to the facts of this case, and (b) even if it does, all of the damages the plaintiff seeks are 'consequential' economic losses and thus barred under Virginia Code §8.2-715, for lack of privity."

#### A. **Property Damage, Not Economic Loss**

The proposition that a party may not recover purely economic losses through tort law is inapposite to the instant case. Plaintiff alleges that Defendant manufactured, supplied and placed into the stream of commerce defective steel tubing, which was used as part of a project to add to and renovate an existing house, and that, as a result of Defendant's negligence, the house was severely damaged. Plaintiff does not merely complain about the inability of the steel tubing to

---

[2] Count III of the complaint further alleges that Omega Flex breached its implied warranty of fitness for a particular purpose, but does not allege that Plaintiff intended to use the product for any purpose separate and apart from its ordinary purpose. A claim for breach of warranty for a particular purpose requires a plaintiff to allege that the product failed to serve a purpose other than its ordinary purpose and peculiar and unique to the plaintiff. *See* Va. Code § 8.2-315. However, Plaintiff's opposition to the motion to dismiss concedes the dismissal of this count.

attain some preconceived notion of performance or quality; rather, Plaintiff alleges substantial consequential damages.

Virginia law makes a clear distinction between the two concepts.

> [W]here personal injury is threatened, a duty in negligence has been readily found. Property interests also have generally been found to merit protection from physical harm. However, *where mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of quality. This standard of quality must be defined by reference to that which the parties have agreed upon.*

*Blake Const. Co., Inc. v. Alley*, 233 Va. 31, 35 (1987) (citation omitted; emphasis added). Here, there is no claim of "deterioration or loss of bargain" or of "a failure to meet some standard of quality. . . . defined by reference to that which the parties have agreed upon." *Id*.

> The distinction between economic loss and physical injury is one which has been made . . . by courts and by commentators. With regard to products liability law, for example, Prosser states the following:
>
>> Where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule ... that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery.

*Bryant Elec. Co., Inc. v. City of Fredericksburg*, 762 F.2d 1192, 1195 n. 6 (4th Cir. 1985) (involving a dispute between a contractor and the project owner's architect and engineer to recover the contractor's additional expenses) (quoting Prosser, *Law of Torts*, 4th Ed. (1971) at 665).

*USAA Property & Casualty Ins. Co. v. Armstrong Air Conditioning, Inc.*, 2004 WL 2331290 (Va. Cir. Ct., Fairfax County 2004), illustrates the distinction between economic loss and property damage. USAA, as subrogee of its insureds, the Cooks, sued various parties in connection with the sale and installation of a furnace, apparently in an existing home. *Id*. at *1. Against the supplier of the furnace, USAA had alleged negligence in introducing a defective

furnace into the marketplace and failure to warn potential consumers of its dangerous condition. *Id*. The supplier, which had sold the furnace to another party which installed it, demurred. *Id*. The court, considering whether the economic loss doctrine barred the tort claims against the supplier, observed as follows:

> The decisive issue here is whether the defective product was the Cooks' residence of which the furnace was a defective part, or whether the product was only the oil burning furnace that harmed the Cooks' other property, then [*sic*] residence. The plaintiff's motion for judgment plainly demonstrates that it was the latter. Accordingly, the product, the oil burning furnace, did not injure itself as was the case in *Sensenbrenner* [*v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419 (1988)], but rather injured other property, not the subject of the oil burning furnace contract.

*Id*.

Similarly, *Factory Mutual Ins. Co. v. DLR Contracting, Inc.*, 2005 WL 2704502 (E.D. Va. 2005), held that, where the plaintiff had suffered property damage *and* economic loss, the economic loss rule did not preclude recovery "if the alleged breach of the duty does not implicate contractual provisions and if damages other than for economic losses are being sought, *e.g.*, damage to property not subject of the contract. . . ." *Id*. at *6. In *Factory Mutual*, a roof truss system failed, causing damage to a shopping center which had opened for business a few months earlier. *Id*. at *1. In the resulting subrogation action by the tenants' insurers, the defendant contractors argued that, pursuant to *Sensenbrenner*, the economic loss doctrine barred the claims. *Id*. at *7. The court disagreed, observing that,

> [a]lthough, as in *Sensenbrenner*, the various parties defendant here were not in privity with the insured tenants, the subrogated cause of action by the Plaintiff insurers can nevertheless be maintained for negligence against DLR and any other party alleged to be negligent where more than only economic losses are being sought. In fact, the Plaintiffs seek damages for both the "injury" to property that was not the subject of contractual obligation between the parties, *e.g.*, inventory, display fixtures, etc. . . . as well as economic loss . . . resulting from the alleged negligence of one or more of the Defendants. . . . Accordingly, the claims by the

Plaintiffs against the primary defendants can proceed subject to a determination at trial of the disputed material fact(s) regarding whether a particular defendant was negligent and whether such negligence proximately caused any of the damages alleged.

*Id*.

### B. Tort, Not Contract

In this matter, Defendant was never directly involved in the project to add to and renovate Ms. Croson's home. There is no allegation that Defendant, as the supplier of a product, was ever cognizant of the specific use to which its product would be put. To the extent Plaintiff's damages could be fairly construed to arise from a contract to renovate a house, a cause of action in tort against the supplier of a product is not precluded.[3] Plaintiff entered into no contract with Defendant; however, even assuming *arguendo* that such a contract existed, a defendant can nonetheless be held liable under both contract and tort law.

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of contract, to take due care, and the defendants are negligent, then the action is one of tort.

*Oleyar v. Kerr*, 217 Va. 88, 90 (1976) (citation omitted). The allegedly breached tort duty must have arisen independently of the contract. *Foreign Mission Bd. of Southern Baptist Convention v. Wade*, 242 Va. 234, 241 (1991) (citing *Spence v. Norfolk & W. R. Co.*, 92 Va. 102, 116 (1895).

> The controlling policy consideration underlying tort law is the safety of persons and property – the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the

---

[3] Indeed, the only economic loss unrecoverable in tort in this case is damage to the steel tubing itself. *See East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871-72, 875-76 (1986) (damage to defective product itself not recoverable in tort).

protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on one hand and economic losses on the other.

*Sensenbrenner*, 236 Va. at 425.

The manufacturer of tubing intended to carry natural gas, then, is subject to duties independent of any contract, as

> [i]t is a fundamental principle that the manufacturer of a product is held to a standard of reasonable care. The duty of reasonable care is that care, skill, and diligence in and about the process of manufacturing and preparing for market that a reasonably skillful and diligent person or a reasonably prudent person would use under the same or similar circumstances. Thus, a manufacturer of an article has the duty of exercising reasonable care at least to see that there is no risk of injury from negligent manufacture where the article is used in the ordinary manner for which it is intended. The manufacturer has the duty to see that the article is free of any potentially dangerous defect or defect that might be expected to produce personal injuries or property damage. In addition, the manufacturer has the duty of making the product reasonably safe for any anticipated emergency and he must provide proper safety devices where required under the circumstances and under the duty of reasonable care.
>
> Such a duty of reasonable care is also applicable to manufacturers of products which are designed to be component parts of other manufactured products.
>
> The lack of safety devices may constitute defective design. If the product is unreasonably dangerous for its intended use, or for a use that can reasonably be expected, without a safety device, then the manufacturer may have a duty to install such a device. Cost, feasibility [*sic*], and obviousness of the danger are factors that must be considered in determining whether such a duty exists.
>
> In a negligence action against a manufacturer in Virginia the plaintiff must show: (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands.

*Dameron v. Fort Worth Steel & Machinery Corp.*, 1985 WL 306781, *3-4 (Va. Cir. Ct., City of Richmond 1985) (citations omitted).

> Manufacturers are expected reasonably to foresee (i) that a person may be injured while the product is being used for the purposes for which it was manufactured and sold and (ii) that a person may be injured while the product is being used in surroundings which are normal for the use of that product.

*Richmond, Fredericksburg and Potomac R. Co. v. Davis Industries, Inc.*, 787 F. Supp. 572, 577 (E.D. Va. 1992) (citations omitted).

Production of an unreasonably dangerous product is not the only basis for holding a manufacturer liable for negligence in Virginia. For example, a manufacturer may also be held liable for failure to warn, as it has been stated that

> [t]he manufacturer of a chattel will be subject to liability when he
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Featherall v. Firestone Tire and Rubber Co.*, 219 Va. 949, 962 (1979) (quoting Restatement (Second) of Torts § 388); *see also French v. York International Corp.*, 72 Va. Cir. 538, 2007 WL 6006671, *2 (Albemarle County 2007) (allegation of failure to warn of known hazards of air conditioner refrigerant states independent cause of action in tort against builder of new house).

Defendant in the instant case manufactured a product that was utilized during the renovation of a house. The complaint does not allege that Defendant specified any criteria for the installation of its product at the house, or that Defendant ever visited the site. Instead, it alleges that Defendant manufactured a defective product, resulting in property damage through its failure to use reasonable care and failure to warn. Defendant is not entitled to dismissal of the complaint.

### C. Privity

Defendant insists that Plaintiff's negligence count is barred by a lack of privity. To the contrary, that AIU's subrogor may not have been in privity with Defendant is irrelevant. "In cases not provided for in [Va. Code] § 8.2-318 where recovery of damages for injury to . . . property resulting from negligence is sought, lack of privity between the parties shall be no defense." Va. Code § 8.01-223. Consequently, a party which alleges negligent destruction of property is not subject to a privity requirement. *See also Blake Construction*, *supra*, 233 Va. at 34.

The case of *Leesburg Auto Center, LLC v. Leo Construction Company*, 45 Va. Cir. 102, 1997 WL 1070482 (Loudon County 1997), is instructive. In *Leesburg Auto Center*, the defendant struck a power line while working on property adjacent to the plaintiff's business. *Id*. at *1. The resulting power surge damaged the plaintiff's equipment, including computers and fax machines, and caused monetary losses arising from business interruption. *Id*. The defendant demurred, arguing that the economic loss doctrine barred the plaintiff's negligence claim. *Id*. The court disagreed, overruling the demurrer, noting that "Leesburg Auto Center is alleging damage to property, both direct and consequential. It is not a cause of action for solely economic loss. Hence, privity is not required." *Id*. Like the parties in that case, Plaintiff's subrogor and Defendant had no direct contractual relationship, and Plaintiff must therefore be permitted to attempt to recover in tort.

### D. Warranty

Citing § 8.2-715 of Virginia's Uniform Commercial Code ("U.C.C."), Va. Code § 8.2-101, *et seq.*, Defendant contends that, because Plaintiff was not in privity with Defendant, Plaintiff is not entitled to recover from Defendant for breach of warranty. Defendant's argument

is unavailing.

Under Article 2 of the Virginia U.C.C., an implied warranty of merchantability attached to the sale of the steel tubing. Va. Code § 8.2-314. Defendant thus warranted, *inter alia*, that the tubing was "fit for the ordinary purposes for which such goods are used." *Id*. § 8.2-314(2)(c).

Section 8.2-318 of the U.C.C. generally eliminates privity as a defense to such warranty claims. It provides as follows:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods; however, this section shall not be construed to affect any litigation pending on June 29, 1962.

To be sure, § 8.2-715, "Buyer's incidental and consequential damages," imposes a contract requirement under certain circumstances, not applicable here. Section 8.2-715 states as follows:

> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
>
> (2) Consequential damages resulting from the seller's breach include:
>
> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>
> (b) injury to person or property proximately resulting from any breach of warranty.

§ 8.2-715. Specifically regarding § 8.2-715(2)(a), the Supreme Court of Virginia has held that

> [t]he phrase "at the time of contracting" in subparagraph (a) conveys the understanding of a contract between two parties. . . . [W]e conclude that § 8.2-

> 715(2)(a) requires a contract between the parties for the recovery of consequential economic loss damages incurred as a result of a breach of warranty by the seller.

*Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc.*, 254 Va. 240, 245 (1997). Addressing the apparent conflict between § 8.2-318 and § 8.2-715(2)(a), the court held that "§ 8.2-715(2)(a) requires a contract between the parties for recovery of consequential *economic loss damages* in a claim for breach of the implied warranty of merchantability. . . ." 254 Va. at 246 (emphasis added.). *See also Pulte Home Corp. v. Parex, Inc.*, 265 Va. 518, 525 (2003) (under § 8.2-715(2)(a), home builder, which had settled with new-home buyers as to defective stucco, was precluded from recovering from manufacturer of stucco in the absence of a contract).

When property damage has occurred, involving more than merely disappointed economic expectations, § 8.2-715(2)(b), not § 8.2-715(2)(a), governs the extent of recoverable consequential damages. According to the Comment to § 8.2-715,

> [s]ubsection (2)(b) states the usual rule as to breach of warranty, allowing recovery for injuries "proximately" resulting from the breach. Where the injury involved follows the use of goods without discovery of the defect causing the damage, the question of "proximate" cause turns on whether it was reasonable for the buyer to use the goods without such inspection as would have revealed the defects. If it was not reasonable for him to do so, or if he did in fact discover the defect prior to his use, the injury would not proximately result from the breach of warranty.

In the instant matter, involving a natural gas supply line installed in real property, Plaintiff's subrogor, Garthland (or Ms. Croson), could not have inspected the item in question prior to putting it to use. As long as there was proximate cause linking the breach of warranty with Plaintiff's property damage, a cause of action in warranty lies. In Count II of its complaint, alleging breach of the implied warranty of merchantability, Plaintiff alleges proximate cause. Thus, Plaintiff has stated a cause of action for consequential damages resulting from the breach of the warranty. As long as a plaintiff states facts which, if proven, would "plausibly" entitle him

to relief, a motion to dismiss cannot be granted. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949.

Defendant cites a number of cases for the principle that a plaintiff may not recover in tort for damage cause by a defective product integrated into construction. These cases are easily distinguishable from the instant case, because in each of the cited cases, the plaintiffs sued for defects in *new* residential construction for which the plaintiffs had *contracted*. Indeed, in each case, the item purchased was the entire structure, and each case but one involved the plaintiff's disappointed economic damages.[4] The courts' reasoning in those cases, regarding why the Virginia U.C.C. did not apply to those plaintiffs' claims, highlights the key distinction between the cited cases and the instant case. Most of the cited cases rely upon *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 30 Va. Cir. 22, 1992 WL 884933 (Fairfax County 1992), which involved a claim by a builder against the supplier of defective roofing material. The court agreed with the defendant that "the homeowners purchased realty, not 'goods' as defined under the UCC." *Id.* at *5. Finding that realty was not subject to the provisions of the U.C.C., the court reasoned as follows:

> [T]he UCC implied warranties do not pass to the *purchasers of residential housing*. Rather, purchasers receive consumer protections under Virginia Code § 55-70.1 *from the developer*. Under § 55-70.1, the developer bears the economic costs of faulty construction and may bargain with the purchaser and disclaim the statutory warranties.

*Id.* at *6 (emphasis added).

In contrast to the facts of *Winchester* and its progeny, in the instant case Plaintiff's

---

[4] The cited cases are: *Glass v. Trafalgar House Property, Inc.*, 58 Va. Cir. 437 (Loudon County 2002); *Bay Point Condominium Associate v. RML Corp.*, 54 Va. Cir. 422 (City of Norfolk 2001); *MacConkey v. F.J. Matter Design, Inc.*, 54 Va. Cir. 1 (City of Virginia Beach 2000); *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 30 Va. Cir. 22 (Fairfax County 1992); and *French v. York International Corp.*, 72 Va. Cir. 538 (Albemarle County 2007). *French* involved personal injury to the plaintiffs.

subrogor did not contract or otherwise arrange for the construction of new housing. The remedies prescribed by Va. Code § 55-70.1, "**Implied warranties on new homes**," are simply inapplicable here. Accordingly, the rationale of cases such as *Winchester* – that the costs associated with defective building components should, as a matter of public policy, be shifted to the home builder – is irrelevant here. In the *Winchester*-type case, "[t]he plaintiffs acquired a home, not goods." *Glass v. Trafalgar House Property, Inc.*, 58 Va. Cir. 437, 2002 WL 31431524, *4 (Loudon County 2002). Here, however, Plaintiff did not acquire a home.

### IV. Conclusion

Plaintiff has alleged a set of facts that, if proved, support its claim for relief. Plaintiff alleges not economic loss, but damage to property – property that was outside the scope of Defendant's obligation to Plaintiff's subrogor.[5] Under the laws of negligence and warranty, the complaint states viable causes of action. Accordingly, the motion to dismiss will be denied, in part, and granted, in part, as follows: regarding Counts I and II of the complaint, the motion to dismiss will be denied; however, as Plaintiff has conceded that dismissal of Count III is appropriate, the motion to dismiss will be granted regarding Count III.[6] An appropriate order follows.

Entered this __9th__ day of June, 2011.

*[signature]*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[5] At the hearing on the instant motion, Defendant argued that the CSST, once installed in the pre-existing home, became a "fixture" in the home and therefore was inseparable either from the home or from the contractor's work. I pause to add that, given the precedents discussed herein, there is no need for me to address this contention.

[6] *See* n. 2, *supra*.