IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| AIU INSURANCE COMPANY,<br>*as subrogee of*<br>GARTHLAND, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>OMEGA FLEX, INC.,<br><br>*Defendant and Third Party Plaintiff,*<br><br>v.<br><br>L&D ASSOCIATES, INC.,<br><br>*Third Party Defendant.* | CIVIL ACTION NO. 3:11-CV-00023<br><br><br>__MEMORANDUM OPINION__<br><br><br><br>JUDGE NORMAN K. MOON |

      This matter is before me upon consideration of the third party defendant's motion to dismiss the third party plaintiff's complaint.[1]  As discussed herein, the motion to dismiss is denied as to the third party plaintiff's claim for contribution; denied as to the third party defendant's asserted affirmative defense based on the statute of repose, Virginia Code § 8.01-250; and granted as to the third party plaintiff's claim for equitable indemnification.[2]

**I.**

      The original plaintiff, AIU Insurance Company ("AIU"), insured the property of its

---

[1] The original plaintiff is not a party to this motion.  The original defendant previously filed a motion to dismiss (docket no. 4), which I denied, in part, and granted, in part, by memorandum opinion and order (docket nos. 24 & 25) entered on June 9, 2011.

[2] At the conclusion of the hearing on March 29, 2012, I stated that I would issue an opinion memorializing my reasons for denying the instant motion.

subrogee, Garthland L.L.C. ("Garthland"), at 1347 Garth Road in Charlottesville.  The original defendant, and now the third party plaintiff, Omega Flex, Inc. ("Omega Flex"), is a Pennsylvania corporation engaged in the business of designing, manufacturing and supplying flexible corrugated stainless steel tubing, commonly known as "CSST."

Garthland contracted with Alexander Nicholson, Inc. ("Nicholson") for remodeling work being performed at a residence located at 1347 Garth Road.  Nicholson was responsible for hiring, coordinating and supervising the contractors who worked on the residence, including the contractors who installed the CSST.

On June 3, 2009, lightning struck at or near the Garthland property.  The allegations of the underlying complaint assert that the lightning strike created a hole in the CSST from which natural gas escaped, ignited, and caused a fire.  AIU paid $249,302.91 to Garthland, pursuant to a policy of insurance, and thereafter filed a subrogation action against Omega Flex.

AIU, as subrogree of Garthland, filed a complaint in the Albemarle County Circuit Court against Omega Flex.  The complaint was based upon the alternative causes of action for negligence, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose.  Omega Flex removed the action to this court pursuant to 28 U.S.C. § 1441(b), as the matter involves a civil action between citizens of different states, and the amount in controversy exceeds$75,000.00.

Ommega Flex filed a motion to dismiss.  By memorandum opinion entered on June 9, 2011, I denied the motion, in part, and granted it, in part.[3]

---

[3] That motion to dismiss was granted as to AIU's claim that Omega Flex had breached its implied warranty of fitness for a particular purpose.  AIU's opposition to the motion to dismiss conceded the dismissal.  *See* memorandum opinion and order (docket nos. 24 & 25) entered on June 9, 2011.

Thereafter, I entered an order granting Omega Flex leave to file a third party complaint, naming L & D Associates, Inc. ("L&D") as a third party defendant.  L&D is a plumbing subcontractor with its principal place of business in Aroda, Virginia.  The third party complaint alleges that L&D installed the natural gas piping and that the CSST was not properly "grounded" or "bonded."  L&D's proposal, invoice, and letter confirming the installation of the natural gas line is  attached as Exhibit C to the third party complaint and is incorporated therein by reference.   The third party complaint states that the original "plaintiff served its initial disclosures," and that, "[a]mong the opinions made by the plaintiff's experts was that the CSST at the subrogor's property was not properly grounded or bonded."[4]

The first count of the third party complaint alleges that Omega Flex "is entitled to equitable indemnification" from L&D because Omega Flex is "without fault to the underlying plaintiff and because the negligence of [L&D] was the proximate cause of any damages sustained by the underlying plaintiff."   Omega Flex "denies all liability to the underlying plaintiff," and maintains that it "was not negligent or at fault in any way in the design, manufacture, warning, labeling, instructions or sale of the CSST at issue in the underlying complaint."   According to Omega Flex, L&D breached its duty to use reasonable care in installing the CSST at Garthland by "failing to properly ground and bond the CSST that it installed."   Omega Flex adds that, to the extent that it "could be held legally liable to the underlying plaintiff, its fault is only passive and derivative of the active and primary fault of the third-party defendant," and that "[t]he duty of the third-party defendant to indemnify Omega

---

[4] In its opposition to the motion to dismiss, Omega Flex states that "AIU's expert disclosures state that the cause of the fire at issue was, at least in part, a failure to properly ground and bond the CSST," and that, "[b]ased upon these opinions, Omega Flex instituted its third-party complaint against L&D, the plumbing subcontractor, and installer of the CSST at issue."

Flex is implied in the law to prevent an unjust result."

The second count of the third party complaint alleges that "Omega Flex is entitled to contribution from [L&D] for any and all sums award against it and to the underlying plaintiff in this matter."   According to the complaint, Virginia Code § 8.01-34 entitles a party "to contribution when it is a joint tortfeasor with another party for negligence not involving moral turpitude," and L&D "is a joint tortfeasor of Omega Flex and the alleged negligence at issue in this matter does not involve moral turpitude."

## II.

L&D moves to dismiss, contending that the action is barred by the statute of repose, and that Omega Flex does not have a valid claim for indemnification or contribution.

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, I apply the pleading standard refined by *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). *See also* Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 8.   Plaintiffs must allege facts that "state a claim to relief that is plausible on its face," *i.e.*, facts that "have nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.   A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949.   The following long-held rule still stands:   "In evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

-4-

While extrinsic evidence is generally not to be considered at the Rule 12(b)(6) stage, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396–97 (4th Cir. 2006); *Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir. 2006).

### III.

*A.*

1.

To state a claim for equitable indemnification, a party must demonstrate that, despite having no "personal fault," it "is nevertheless legally liable for damages caused by the negligence of another"; the innocent-yet-liable party can then "recover from the negligent actor for the amounts paid to discharge the liability." *Carr v. Home Insurance Company*, 250 Va. 427, 429 (1995) (citing *Maryland Casualty Co. v. Aetna Casualty & Surety Co.*, 191 Va. 225, 232 (1950); *McLaughlin v. Siegel*, 166 Va. 374, 377 (1936)).  "A prerequisite to recovery based on *equitable* indemnification is the initial determination that the negligence of another person caused the damage." *Id*. (emphasis added).  "Without that determination, neither the negligent actor nor the innocent party can be held liable for the damages claimed." *Id*.[5]

Omega Flex suggests that an *allegation* of negligence is all that is necessary to state a

---

[5] The Supreme Court of Virginia added that,

> at the time Home [the subrogee, and plaintiff below] filed its motion for judgment, there had been no determination that Carr's actions were negligent or that her negligence caused the damages claimed by [Home's subrogor].  Consequently, the elements necessary to support equitable indemnification in favor of Home were not met.

*Carr v. Home Insurance Company*, 250 Va. 427, 429 (1995).

claim for equitable indemnification.  In support of this proposition, Omega Flex cites a Circuit Court of Virginia opinion, *CSX Transp., Inc. v. Titan Am., L.L.C.*, 72 Va. Cir. 593, 2004 WL 2999134 (City of Richmond Nov. 2, 2004).[6]  However, *CSX* re-states the holdings of *Carr*, 250 Va. at 429, and *Pulte Home Corporation v. Parex, Inc.*, 265 Va. 518, 528-29 (2003), which revisited and affirmed the requirements for equitable indemnification elucidated in *Carr*, stating:

> We did say in *Carr* that we agreed that "[e]quitable indemnification arises when a party[,] without personal fault, is nevertheless legally liable for damages caused by the negligence of another."  *Id.* at 429, 463 S.E.2d at 458.  But we also said that "[a] prerequisite to recovery based on equitable indemnification is the initial determination that the negligence of another person caused the damage."  *Id.*
>
> * * *
>
> Pulte . . . .  cannot win under *Carr* because there has been no determination that any act or omission of Parex caused the damage. . . .

Here, there has been no adjudication of Omega Flex's liability to AIU, and Omega Flex cannot allege that it has discharged any liability resulting from L&D's alleged negligence.  As such, an equitable indemnification claim by Omega Flex against L&D is not ripe.  *See, e.g.*, *DiMarco Constructors, LLC v. Staunton Plaza, LLC*, Civil Action No. 5:09-cv-00001, 2009 WL 2058686 *3 n. 5 (Jul. 14, 2009) ("Because there has been no adjudication of [third party plaintiff's] liability to Staunton Plaza, and thus [third party plaintiff] cannot allege that it discharged liability resulting from [third party defendant's] alleged harm, an equitable indemnification claim by [third party plaintiff] against [third party defendant] is not yet ripe."). Accordingly, L&D's motion to dismiss must be granted without prejudice as to Omega Flex's

---

[6] Actually, *CSX* merely observes that, "whether labeled implied or equitable, an indemnification claim . . . is assertable *without an allegation of a contractual relationship* as long as there is an allegation of negligence on the part of another alleged joint tortfeasor."  *CSX Transp., Inc. v. Titan Am., L.L.C.*, 72 Va. Cir. 593, 2004 WL 2999134 *2 (City of Richmond Nov. 2, 2004) (emphasis added).

claim for equitable indemnification.

2.

At the hearing on L&D's motion to dismiss, Omega Flex brought to my attention the following section of the Code of Virginia:

> **§ 8.01-281. Pleading in alternative; separate trial on motion of party.** – A. A party asserting either a claim, counterclaim, cross-claim, or third-party claim or a defense may plead alternative facts and theories of recovery against alternative parties, provided that such claims, defenses, or demands for relief so joined arise out the of the same transaction or occurrence. Such claim, counterclaim, cross-claim, or third-party claim may be for contribution, indemnity, subrogation, or contract, express or implied; it may be based on future potential liability, and *it shall be no defense thereto that the party asserting such claim, counterclaim, cross-claim, or third-party claim has made no payment or otherwise discharged any claim as to him arising out of the transaction or occurrence.* . . .

Va. Code Ann. (2007 Repl. Vol.) (emphasis added). Indeed, it is beyond dispute that, "[i]n 1981, . . . the Virginia General Assembly amended § 8.01-281 of the Code to allow third-party claims for contribution and indemnity to be based on future potential liability," *i.e.*, subsection A "allows third-party plaintiffs to make these indemnity claims before the actual claim has technically accrued." *Wingo v. Norfolk & W. Ry.*, 638 F. Supp. 107 (W.D. Va. 1986), *rev'd on other grounds*, 834 F.2d 375 (4th Cir. 1987).

Given that *Carr* was decided by the Supreme Court of Virginia in 1995, 14 years after § 8.01-281(A) was so amended, it must be that indemnification is a contractual remedy, distinct from equitable indemnification, an equitable remedy. The Court has never explicitly drawn the distinction between the two, but it seems readily apparent. In *Virginia Elec. & Power Co. v. Wilson*, 221 Va. 279 (1981), the Court stated that "[t]he distinguishing feature of indemnity is that it must necessarily grow out of a contractual relationship." *Id.* at 981-82. In 2003, the Court restated this principle, clarifying in *Pulte* that the statement that indemnity must grow out of a

-7-

contractual relationship "is not dicta." 265 Va. at 528. Yet *Pulte* also restated and affirmed the holding of *Carr* that equitable indemnification "arises when a party without personal fault, is nevertheless legally liable for damages caused by the *negligence* of another." *Carr*, 250 Va. at 429; *see also Pulte*, 265 Va. at 528-29 (quoting *Carr*). Thus, it appears that "indemnity" is a contractual remedy, while "equitable indemnification," on the other hand, is an *equitable* remedy, *i.e.*, a non-contractual remedy for someone else's negligence. *See id.*; *see also Pulte*, 265 Va. at 528-29. Accordingly, § 8.01-281(A) does not abrogate the holding in *Carr* that "[a] prerequisite to recovery based on *equitable* indemnification is the initial determination that the negligence of another person caused the damage." 250 Va. at 429 (emphasis added).

*B.*

"'Code § 8-627 [now Code § 8.01-34] provides for contribution among wrongdoers for mere acts of negligence not involving moral turpitude. However, before contribution may be had it is essential that a cause of action by the person injured lie against the alleged wrongdoer from whom contribution is sought.'" *Pierce v. Martin for Benefit of Commercial Union Ins. Co.*, 230 Va. 94, 97 (1985) (quoting *Bartlett v. Recapping, Inc.*, 207 Va. 789, 792-93 (1967)). "It is firmly established that a contribution plaintiff cannot recover from a contribution defendant unless the injured party *could have* recovered against the contribution defendant." *Id.* at 96 (emphasis added). Here, it is clear that the injured party could have recovered from L&D.

In order to support a negligence cause of action a plaintiff must plead (and thereafter establish) the existence of a legal duty, a breach of that duty, and that the breach proximately caused the resulting damages. *See Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293 (2003). The legal duty alleged must be one existing in common law and not simply one created through a contract. *See Augusta Mutual Ins. Co. v. Mason*, 274 Va. 199, 205 (2007); *Richmond*

-8-

*Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558 (1998); *Spence v. Norfolk & W. R. Co.*, 92 Va. 102, 116 (1895).

Contrary to L&D's argument, Virginia law does impose a common law duty upon L&D to perform its services, *i.e.*, installation of the natural gas lines to two of the residence's fireplaces, in a reasonable, safe fashion. Addressing Omega Flex's own previous motion to dismiss, this court has already ruled that the injury suffered by Garthland was not purely economic loss but, rather, constituted property damage. In Virginia, property damage is the province of tort law, because "the controlling policy consideration underlying tort law is the safety of persons and property. . . ." *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.*, 236 Va. 419, 425 (1988). One who enters upon real property to make repairs or improvements assumes a common law duty to the property's owner and any foreseeable users to make the repairs or improvements in a reasonable manner so as not to create a danger to person or property. *See Kaltman v. All American Pest Control, Inc.*, 281 Va. 483, 492-93 (2011) (regarding allegations of personal injuries and property damage from the application of pesticides, the Court concluded that, "[j]ust because the application of pesticides is included in [All American Pest Control's] contractual duty to control pests, it does not follow that the Kaltmans have contracted away their common law and statutory rights."); *see also Filak v. George*, 267 Va. 612, 618 (2004) ("[t]he primary consideration underlying tort law is the protection of persons and property from injury").

It does not take an expert opinion to know that improper or unreasonable installation of gas lines in a residence can lead to grievous bodily harm or property damage. Natural gas is "an inherently dangerous substance." *See Baker v. Poolservice Co.*, 272 Va. 677, 686 (2006). Therefore, it was reasonably foreseeable to L&D that, if it did not properly install the gas lines,

Garthland could suffer damage to its property, not to mention potential bodily injury to the residence's occupants. Accordingly, L&D owed a common law duty to Garthland under Virginia law to install the gas lines in a reasonable fashion.

L&D also suggests that Garthland could not have sued it in tort because it was only in privity of contract with Nicholson.  Again, L&D's argument is misplaced.  As I have already explained in my earlier opinion regarding Omega Flex's motion to dismiss, privity is not required for the plaintiff to recover its alleged damages in tort.

Moreover, even if I were to conclude that privity was required for Garthland to recover in tort from L&D, privity did indeed exist between Garthland and L&D, given that Garthland was an intended third-party beneficiary of the contract between Nicholson (the general contractor) and L&D.  *See* Va. Code Ann. § 55-22 (2007 Repl. Vol.).  L&D can hardly argue that the purpose of its retainer by Nicholson, *i.e.*, installation of plumbing fixtures and gas lines in the residence, was not to confer a direct benefit upon Garthland.  Thus, L&D owed a common law duty to Garthland, and the latter could have sued L&D in tort for the injuries it suffered as a result of the June 3, 2009 fire.

In Virginia, "[t]he right to contribution does not arise out of any express agreement or contract, but is based on broad principles of equity that where two or more persons are subject to a common burden it should be borne equally." *Van Winckel v. Carter*, 198 Va. 550, 555 (Va. 1956).  If two or more persons are negligent and if the negligence of each proximately causes another's injury, each tortfeasor is liable for the injury. *Sullivan v. Robertson Drug Co.*, 273 Va. 84, 92 (2007).  If separate and independent acts of negligence of two parties directly cause a single indivisible injury to a third person, either or both wrongdoers are responsible for the whole injury.  *Maroulis v. Elliott*, 207 Va. 503, 511 (1966); *Murray v. Smithson*, 187

Va. 759, 764 (1948).

Here, Omega Flex alleges that its claims against L&D arise from a joint obligation not to damage the Garthland property through a negligent act, either by manufacturing defective CSST, or improperly installing it.  Virginia's contribution statute provides that "[c]ontribution among wrongdoers may be enforced when the wrong results from negligence and involves no moral turpitude."  Va. Code. Ann. § 8.01-34 (2007 Repl. Vol.).  This statute has been held to give a right of contribution where the person injured "has a right of action against two persons for the same indivisible injury." *Virginia Elec. & Power Co. v. Wilson*, 277 S.E.2d 149, 150 (Va. 1981) (adding that, "[t]hough the concurring negligence of two persons may have resulted in an indivisible injury to a third, if the third person has a cause of action against only one of them, that one cannot enforce contribution from the other").  Recovery in tort is available when "there is a breach of a duty 'to take care for the safety of the person or property of another,'" *Sensenbrenner*, 236 Va. at 425 (quoting *Blake Construction Co. v. Alley*, 233 Va. 31, 34 (1987)), and I understand § 8.01-34 to make a contribution claim available from the alleged joint tortfeasors in this case. *See Kohl's Dept. Stores, Inc. v. Target Stores, Inc.*, 214 F.R.D. 406, 414-15 (E.D. Va. 2003).  And I repeat that, even were I to conclude that privity was required for Garthland to recover in tort from L&D, privity did indeed exist between Garthland and L&D, given that Garthland was an intended third-party beneficiary of the contract between Nicholson (the general contractor) and L&D. *See* Va. Code Ann. § 55-22 (2007 Repl. Vol.).

## C.

As a final argument, L&D argues that I should dismiss the third party complaint because Virginia's statute of repose, Virginia Code § 8.01-250, bars Omega Flex's claims.  A statute of repose, unlike a statute of limitations, extinguishes a cause of action after a certain amount of

-11-

time without reference to when the cause of action accrued.  *See Link v. Bakshi*, 539 F. Supp. 2d 846, 847 n. 2 (W.D. Va. 2008).

Contrary to L&D's contention, the well-pleaded allegations and documents attached to the third party complaint do not establish that the statute of repose applies to bar Omega Flex's claims, and I observe that L&D bears the burden of proof on this affirmative defense.  *See Link*, 539 F. Supp. 2d at 848 (citing *Baker*, 272 Va. at 688).   On a Rule 12(b)(6) motion a court "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred."  *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). The United States Court of Appeals for the Fourth Circuit has explained that granting Rule 12(b)(6) motions based on affirmative defenses would "require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised."  *Id*. at 466.   In the "relatively rare circumstances" where an affirmative defense can be ruled on in a Rule 12(b)(6) motion, "all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint*.'" *Id*. at 465 (citations omitted).

In this matter, there are no facts apparent "on the face of the complaint" that show that the statute of repose applies to bar Omega Flex's claim.  In support of its motion to dismiss, L&D relies solely upon the following factual assertion:

> According to the documents attached to the Third Party Complaint, as 37-3, L & D Associates, Inc. completed their work on the remodel in June/July of 2005.  As such, June/July of 2005 are the relevant dates for computing the Statute of Repose's five year period.  As the Third Party Complaint was not filed until September of 2011, Omega Flex, Inc.'s suit is barred because it has been brought more than five years after L & D Associates, Inc. completed installation of the CSST.

The third party complaint makes no factual allegations as to the date when the CSST was

installed at the residence in question, or when L&D ended its work on the construction project. L&D contends, however, that the factual support for its motion to dismiss comes from the documents attached as Exhibit C to the third party complaint, offered in support of Omega Flex's contention that L&D installed the CSST at the residence in question.  The particular document cited by L&D in its motion is a letter to Nicholson (the general contractor) that states that L&D installed gas lines at the residence in question "on or about June/July 2005."

L&D claims that the statement in Exhibit C establishes that it "completed" its work on the Garthland property in July 2005.  L&D argues that its interpretation is conclusive as to the statute of repose.[7]  However, at the motion to dismiss stage, the reasonable conclusion derived from this document is that L&D *installed* the CSST at the residence in question "on or about June/July 2005," not that L&D "*completed* its work on the project in June/July 2005," as L&D claims in its motion.  (Emphasis added.)  This is important, for the statute of repose, with respect to "subcontractors or other entities not involved with the entire project," begins to run "when [that entity] furnishes material or completes its portion of the work."  *Kohl's Dept. Stores, Inc. v. Target Stores, Inc.*, 290 F. Supp. 2d 674, 684-85 (E.D. Va. 2003).

A review of the other documents contained within Exhibit C further indicates to me that this is a factual question not suitable for resolution at the 12(b)(6) stage. There is a plumbing plan cost estimate submitted by L&D for services like "PVC drains," "Moving the Kitchenette rough-in," "Ice-maker and dishwasher hookups," and "Installation of pot-filler and instant-hot."

---

[7] To be sure, where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." *United States ex rel. Constructors, Inc. v. Gulf Ins. Co.*, 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)); *see also Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995), *vacated and remanded on other grounds*, 517 U.S. 1206 (1996).  However, contrary to L&D's assertion, there is no conflict here, and L&D's contention that the statement establishes conclusively that L&D "completed" its work in July 2005 is erroneous.

There are invoices for services performed by L&D as the plumbing subcontractor, including services for things other than the installation of gas lines at the residence in question.  Each of these documents makes it clear that L&D's role on the project was far more than the installation of the CSST at issue.  As such, when the document relied upon by L&D to support its statute of repose argument is examined in its proper context, it is apparent that the document does not necessarily support L&D's conclusion that it *ceased* work on the project in "June/July 2005," and certainly does not establish the affirmative defense.[8]

Accordingly, I will deny L&D's motion to dismiss on the ground that the complaint is barred under the terms of the statute of repose, Virginia Code § 8.01-250.

## IV.

For the heretofore stated reasons, the motion to dismiss is granted, in part, and denied, in part.

Entered this ____3rd____ day of April, 2012.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[8] In the context of this case, the statute of repose for L&D began to run when it completed its work on the construction project at issue.  Prior to the institution of the third party complaint, Omega Flex issued a subpoena duces tecum to L&D.  See docket no. 45, Omega Flex Opposition, Exhibit 3.  Among the documents submitted by L&D is a seven page ledger showing its materials and labor for the project.  This ledger shows entries for "labor" performed by L&D on September 30, 2006; October 31, 2006; and December 31, 2006.  The ledger also shows entries for "materials" stretching all the way until December 31, 2007.

Omega Flex's third party complaint was filed on September 12, 2011, and each of the discussed ledger entries occurred within five years of Omega Flex filing the third party complaint, and show that the statute of repose had not yet run.  The production submitted by L&D in response to Omega Flex's subpoena also contains numerous work orders, invoices, and receipts showing working on the project at issue after September 1, 2006.  Interestingly, one work order, dated March 26, 2007, states "looked @ running gas to fireboxes."  A fair review of these documents suggests that L&D's work on the project might not have ended more than five years before Omega Flex filed its third party complaint.  In any event, this is a factual question not suitable for resolution on a 12(b)(6) motion.